UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TERRI LYNETTE WARFIELD, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Case No.  13-1357 (RJL) |
| CAROLYN W. COLVIN, | ) | |
| Defendant. | ) | |

**FILED**

SEP 2 2 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**
September 22, 2015 [#10, #12]

Plaintiff Terri Lynette Warfield ("plaintiff") brings this action against defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration ("defendant") pursuant to 42 U.S.C. § 405(g), seeking reversal of the denial of her application for Social Security Disability Insurance ("DIB") and Supplemental Security Income ("SSI") benefits. *See* Compl. [Dkt. #1]. This case comes before this Court on plaintiff's Motion for Judgment of Reversal [Dkt. #10] and defendant's Motion for Judgment of Affirmance [Dkt. #12]. For the reasons set forth below, the Court GRANTS in part and DENIES in part plaintiff's motion and DENIES defendant's motion.

**BACKGROUND**

**I.      Statutory Background**

Titles II and XVI of the Social Security Act provide benefits for "disabled" claimants, 42 U.S.C. §§ 423(a), 1382(a)(1), who demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months," *id.* §§ 423(d)(1)(A), 1382c(a)(3)(A).  In order to qualify, the impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner of the Social Security Administration ("Commissioner") assesses disability claims through a five-step sequential evaluation.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The burden of proof rests on the claimant in steps one through four, but shifts to the Commissioner at step five.  *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  At step one, the claimant must show that she is not presently engaged in "substantial gainful activity." *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  At step two, the claimant must show that she has at least one "severe impairment" or combination of impairments that significantly limits her ability to perform basic work activities. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If she does, step three requires the Commissioner to determine whether the claimant's impairments "meet" or "functionally equal" one of the impairments listed in the relevant regulations, Appendix 1 to subpart P of 20 C.F.R. § 404 ("Listed Impairments"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If they do, the claimant "is deemed disabled and the inquiry is at an end." *Butler*, 353 F.3d at 997; 20 C.F.R. §§ 404.1520(d), 416.920(d).

Before moving from step three to step four, the Commissioner assesses a claimant's "residual functional capacity" ("RFC")—that is, the Commissioner must

2

determine the most work the claimant can still do despite her limitations. *Id.* §§ 404.1520(a)(4), 416.920(a)(4), 404.1545(a).  At step four, the claimant must demonstrate that she is incapable of performing her prior work based on her RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If she makes this showing, the burden shifts at step five to the Commissioner to demonstrate that, based on the claimant's RFC, she can "make an adjustment to other work" in the national economy. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the Commissioner concludes that the claimant can engage in "other work," then she is not disabled under the regulations. *Id.* §§ 404.1520(g), 416.920(g). Otherwise, the claimant is disabled and entitled to benefits. *Id.*

If a claimant's application for DIB or SSI is initially denied, she has the option of seeking review by an administrative law judge ("ALJ"). *See* 20 C.F.R. § 404.929.  When disability claims are adjudicated before an ALJ, the ALJ is obligated to compile a comprehensive record incorporating all facts pertinent to the Commissioner's determination. *See Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989).  The ALJ's opinion must show that he "has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits," *id.*, including evidence that was rejected, *Brown v. Bowen*, 794 F.2d 703, 708 (D.C. Cir. 1986).  In particular, the ALJ is required to give controlling weight to the medical opinions presented by the claimant's treating physician "unless [they are] contradicted by substantial evidence," *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993), and must "give good reasons" for rejecting such an opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Jones v. Astrue*, 647 F.3d 350, 355-57 (D.C. Cir. 2011) (remanding case to the ALJ to explain his

reasons for rejecting treating physician's opinion).  However, a treating physician's opinion that a claimant is "unable to work" is not accorded any special deference.  20 C.F.R. §§ 404.1527(d), 416.927(d).

A claimant may appeal the ALJ's decision to the Appeals Council.  20 C.F.R. § 416.1470(a).  As part of its review, the Council is required to consider any additional evidence submitted by the claimant that is new, material, and reasonably related to the period prior to the ALJ's decision.  *See id.* § 416.1470(b).  Evidence is "new" when it is not duplicative or cumulative and is "material" when there is a "reasonable possibility that the new evidence would have changed the outcome." *Jeffries v. Astrue*, 723 F. Supp. 2d. 185, 194 (D.D.C. 2010).  Evidence that post-dates the ALJ hearing may be "reasonably related" to the period before the hearing if, for example, it "makes a direct reference to the time period adjudicated by the ALJ."  Hearings, Appeals, and Litigation Law Manual ("HALLEX"), Soc. Sec. Admin. § I-3-3-6(B) (Jan. 27, 2012).  However, "evidence is not related to the period at issue when [it] shows . . . [a] worsening of the condition or onset of a new condition after the date of the ALJ opinion." *Id.*

## II.    Factual Background

Plaintiff first applied for DIB and SSI benefits on December 29, 2009, claiming that she had been disabled since May 29, 2009.  AR at 220.  Her initial application was denied in July 2010, AR at 114, 118, as was her request for reconsideration, AR at 126, 130.  She challenged the Commissioner's decision at a hearing before an ALJ in July 2011.  AR at 28.  The ALJ found that she was not disabled and therefore was ineligible for benefits on January 24, 2012.  AR at 25.  The ALJ's determination was based on a

lengthy record that indicates plaintiff has suffered from myriad physical and mental conditions over the last fifteen years, resulting in a long and complex medical history. In the interests of judicial economy, I offer an overview of those portions of this record most relevant to the arguments now before the Court.

In April 2008, plaintiff sought emergency medical treatment for chest pain and left arm numbness, at which time she was diagnosed with atypical chest pain, hypertension, migraine headache, history of seizure, and urinary tract infection. AR at 385-87. In May 2009, plaintiff again sought treatment for chest pain, AR at 431, which was determined to be non-cardiac in nature, AR at 436. On May 29, 2009, Caroline Samuels, M.D. completed a medical report form diagnosing plaintiff with severe migraines that "restrict her day to day activity," chest pain that was not indicative of significant coronary artery disease, hypertension that was well-controlled, history of seizures, and speech fatigue and muscle weakness that necessitated a neurology work-up. AR at 425-28. Dr. Samuels found that plaintiff had no restrictions in her ability to sit, bend, squat, climb, reach, and crawl, but provided no opinion on her ability to walk, climb, or carry. AR at 426. She estimated that plaintiff could carry less than ten pounds. *Id.* As to plaintiff's mental condition, Dr. Samuels noted that plaintiff's anxiety disorder caused here to suffer moderate restriction in activities of daily living and maintaining social functioning and that plaintiff frequently had difficulty maintaining concentration, persistence, or pace. AR at 427. Overall, Dr. Samuels estimated that plaintiff was unable to work from May 29, 2009 through May 29, 2010. *Id.* Over the next several months, plaintiff complained of lingering pain in her ankle stemming from a previous sprain, AR at 460, 465, but her

hypertension and migraines continued to be well-controlled, AR at 459, 461. However, by May 7, 2010, plaintiff denied muscle aches, muscle weakness, arthralgias, joint pain, headaches, and fatigue. AR at 582.

This respite from physical ailments, however, proved to be short-lived. On May 18, 2010, plaintiff went to the emergency room with a headache that had persisted five days and was associated with nausea and upper extremity weakness. AR at 494, 498. On December 3, 2010, plaintiff complained of migraines three times a month, anxiety attacks about three times a week, and joint pains. AR at 580. In March 2011, plaintiff sought medical treatment for several episodes of syncope and continuing dizziness. AR at 540, 543, 546, and in April 2011 she sought emergency treatment after fainting, AR at 587. Despite all these ailments, in March 2011, state agency medical consultant James Grim, M.D. reviewed plaintiff's file and determined that plaintiff was physically capable of normal work activity with seizure precautions. AR at 100.

Alongside her physical ailments, plaintiff suffers from serious mental health problems. At a relatively young age, plaintiff was diagnosed with generalized anxiety disorder, AR at 526-27. On May 19, 2010, Sunanda Mangraj, M.D., who saw plaintiff every few months for this disorder, opined that plaintiff's prognosis was good, and that she was capable of managing benefits on her own behalf and that she could perform work related activities normally. AR at 488. On July 11, 2010, state agency medical consultant M. Prout agreed noting that plaintiff's generalized anxiety disorder was not a severe mental impairment. AR at 509. On February 2, 2011, Judith Ryan, Ph.D. oversaw a psychiatric consultative examination and concluded from plaintiff's myriad symptoms

6

that plaintiff suffered from mild depression and opined that her mental condition was marked by symptoms of bipolar disorder with psychotic features, including auditory and visual hallucinations. AR at 526-29. On March 4, 2011, state agency medical consultant Norman Kane, Ph.D. reviewed plaintiff's file and determined that plaintiff's mental condition did not meet or equal any listed impairment, specifically considering Listing 12.04 for affective disorders. AR at 99.

Applying the five-step sequential evaluation process to these facts, the ALJ found that plaintiff satisfied the first two steps of the evaluation, stating specifically that plaintiff had eight "severe impairments: angina, hypertension, sleep apnea, migraines, history of a seizure, anxiety disorder, personality disorder, and depression." AR at 32. However, at step three, the ALJ determined that plaintiff's severe impairments did not meet or equal the severity of one of the Listed Impairments, specifically listing 12.06 for "anxiety related disorders." AR at 31. Before moving to steps four and five, the ALJ determined that plaintiff had the RFC to perform light work, subject to several physical and working-environment limitations. AR at 32. The ALJ further concluded that plaintiff had moderate difficulties in daily activities, in social functioning, and in concentration, persistence, or pace, which limited her to performing simple, routine unskilled tasks not involving significant stress and involving no more than minimal contact with co-workers, supervisors, or the public. AR at 32. Based on this assessment, the ALJ concluded at step four that plaintiff was not able to perform her past relevant work. AR at 35. Nonetheless, the ALJ found at step five that plaintiff could perform light, unskilled jobs, such as a housekeeper or sorter, existing "in significant numbers in

the national economy." AR at 35-36. Based on this finding, the ALJ determined that plaintiff was not disabled and therefore not entitled to benefits.

In May 2013 plaintiff sought review of the ALJ's decision by the Appeals Council. AR at 23. She submitted new evidence to the Council regarding her September 2012 diagnosis of fibromyalgia. Pl.'s Mem. of Law in Supp. of Mot. for J. of Reversal 5 [Dkt #10-1] ("Pl.'s Mem."). On June 15, 2013, the Council found that plaintiff's request for review was without merit because the evidence as to plaintiff's fibromyalgia diagnosis was "about a later time" and therefore "[did] not affect the decision about whether [she was] disabled beginning on or before January 24, 2012." AR at 1-2. On September 9, 2013, plaintiff filed suit in this Court seeking review of the denial of her claims for DIB and SSI. *See generally* Compl. Plaintiff subsequently moved for judgment of reversal; defendant moved for affirmance.

## LEGAL STANDARD

In a Social Security disability case, a reviewing court must uphold an ALJ's determination if it correctly applies the governing legal standards and is based on substantial evidence in the record. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support [a] conclusion," *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987), and demands, as a practical matter, evidence of "more than a scintilla, but less than a preponderance of the evidence," *Affum v. United States*, 566 F.3d 1150, 1163 (D.C. Cir. 2009) (internal quotation marks omitted). A reviewing court may not substitute its own judgment for that of the ALJ or engage in independent fact-finding. *See Martin v. Apfel*,

118 F. Supp. 2d 9, 13 (D.D.C. 2000).  Bearing in mind this deferential standard, this

Court's task on appeal is to carefully scrutinize the record to determine whether the

ALJ's decision is supported by substantial evidence and to ensure that the ALJ has

adequately articulated the basis for the decision.  *See Simms*, 877 F.2d at 1050.  Remand

is appropriate where it is unclear if "the [Commissioner] considered . . . new and material

evidence[]," if the record is incomplete, or if the ALJ's reasoning is not fully articulated.

*Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 111 (D.D.C. 2010).

## DISCUSSION

Plaintiff asks this Court to reverse the ALJ's decision and order the Commissioner

to award her DIB and SSI benefits, or alternatively, to remand the case to the ALJ for

reconsideration, citing several deficiencies in the Commissioner's decision: (1) the

Appeals Council refused to consider the new and material evidence of her fibromyalgia

diagnosis; (2) the ALJ erred at step three by failing to consider the judgment of a medical

advisor designated to provide an opinion on the issue of equivalence and by failing to

consider whether the combination of plaintiff's impairments "meet or equal" an

applicable Listed Impairment; (3) the ALJ abused her discretion in giving "little weight"

to the opinion of plaintiff's treating physician; and (4) the ALJ lacked substantial

evidence to conclude plaintiff is capable of work.  Pl.'s Mem. 5-6.  For the reasons

discussed below, I find plaintiff's arguments in favor of reversal unconvincing, but find

that the ALJ did commit several errors of law at step three warranting remand.

### I.    Evidence of Plaintiff's Diagnosis of Fibromyalgia

Plaintiff's first, and indeed predominant, complaint is that the Commissioner

failed to consider new and material evidence relating to her diagnosis of fibromyalgia.

When plaintiff sought Appeals Council review of the ALJ's January 24, 2012 decision,

she asked the Council to consider evidence of her September 2012 diagnosis of

fibromyalgia. Pl.'s Mem. 12-14. Although the diagnosis of fibromyalgia post-dated the

ALJ's decision, plaintiff argued it was related to the period on or before it. *Id.* The

Council disagreed. Finding that the evidence was "about a later time," the Council

concluded that the evidence was irrelevant to the ALJ's determination of plaintiff's

disability on or before January 24, 2012. AR at 2. Plaintiff now asks this Court to

consider, in the first instance, the evidence of her fibromyalgia diagnosis, to conclude that

plaintiff has a medically determinable impairment of fibromyalgia, and to award her

social security benefits. Pl.'s Mem. 8-12. Alternatively, plaintiff asks this Court to

remand the case with directions to consider this "new and material evidence." *Id.* 12-14.

As to plaintiff's suggestion that this Court determine that she is disabled based

upon the medical evidence of her fibromyalgia, the Court declines such invitation. This

Court will not embark on such an impermissible independent fact-finding endeavor. *See*

*Butler*, 353 F.3d at 999. It is for the Commissioner, and the Commissioner alone, to

determine in the first instance whether plaintiff has a medically determinable impairment

of fibromyalgia and whether that illness renders her disabled under the law. This Court's

authority in this respect is limited to *reviewing* the Commissioner's determination in light

of "the evidence upon which the findings and decision complained of are based" to

ensure it is supported by substantial evidence. 42 U.S.C. § 405(g). It would be

inappropriate for this Court to base a reversal and award of benefits on evidence that

post-dates the ALJ's determination and therefore was not—indeed, could not—have been the basis for his determination.

Of course, this Court's review does include determining whether the Appeals Council *rightly* refused to consider plaintiff's new evidence. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Unfortunately for plaintiff, I find that it did. The Council is required to consider "new and material evidence . . . only where it relates to the period on or before the date of the [ALJ] hearing decision." *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). This includes evidence that (1) is dated before or on the date of the ALJ decision, or (2) post-dates the ALJ decision, but is reasonably related to the time period adjudicated by the ALJ. HALLEX § 1-3-3-6 (B). Moreover, the evidence will not be considered if it shows a worsening or new condition. *Id.*

Although plaintiff argues that her new diagnosis of fibromyalgia relates to the period prior to the ALJ's decision because it explains the symptoms she experienced during that period, Pl.'s Mem. 12-14, there is simply nothing in the physician's documentation that indicates this to be the case. Pl.'s Notice Ex. 1-4 [Dkt. #11]. Further, even if plaintiff is correct that the diagnosis indirectly relates back because she exhibited some symptoms of fibromyalgia prior to January 2012, there is substantial evidence in the record indicating that the new evidence shows a worsening of plaintiff's overall condition. Def.'s Mem. 15-16. For example, Dr. Artis-Trower's assessment of plaintiff's functional abilities in February 2013—including that plaintiff experienced constant pain and muscle weakness that limited her mobility and made it difficult for her to sit for more than an hour, Pl.'s Notice Ex. 4—indicates marked decline from the period under the

ALJ's review.  Indeed, notes from a physical exam in 2009 state that plaintiff was "able

to walk with no disability," AR at 466; in May 2010, plaintiff did not complain of muscle

aches, weakness, or joint pain in what was a normal physical examination, AR at 582;

and in January 2011 plaintiff presented with normal motor strength and tone, normal

reflexes, normal joints, bones, and muscles, and she moved all extremities well, AR at

578.  Accordingly, even assuming the evidence was "new and material," I find that the

Appeals Council did not err in excluding it.[1]

## II.   The ALJ's Step Three Determination

At step three, the ALJ must consider whether the combined effect of all a

claimant's impairments, both physical and mental, "meets" or "functionally equals" a

Listed Impairment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1523.  If the ALJ finds the

claimant's impairments to be equivalent to a Listed Impairment, then the claimant is

deemed disabled and the analysis is over.  Although the claimant has the burden of

proving equivalence at this step, the ALJ is required to "develop a comprehensive record

on which to base her decision," *Charles v. Astrue*, 854 F. Supp. 2d 22, 28 (D.D.C. 2012),

and give the reviewing court an "indication not only of what evidence was credited, but

also whether other evidence was rejected rather than simply ignored," *Brown*, 794 F.2d at

708.  A singular statement by the ALJ that he considered the claimant's impairments and

determined that they did not, individually or in combination, meet or equal a listing is not

sufficient.  *See Davis v. Shalala*, 862 F. Supp. 1, 7 (D.D.C. 1994).

---

[1] Of course, all is not lost for plaintiff.  As the Appeals Council noted, she retains the right to file
a new application with the SSA.  AR at 2.

Plaintiff advances two arguments as to why the ALJ's step three determination was procedurally defective: (1) the ALJ did not adequately consider whether her combined physical and mental impairments were equivalent to a listed impairment, Pl.'s Mem. 16-17, and (2) the ALJ erred by receiving into evidence the opinion of a psychologist, but not of a physician, regarding the equivalence of plaintiff's impairments, including "several non-psychosomatic severe impairments," Pl.'s Mem. 15.  I agree.

Despite having concluded in step two that plaintiff suffers from myriad severe physical impairments, including angina, hypertension, sleep apnea, migraines, and history of seizure, AR at 30, at step three the ALJ does not appear to have considered plaintiff's *physical* impairments at all, instead focusing exclusively on plaintiff's *mental* impairments.  AR at 31-32.  The ALJ does state generally that "claimant's impairments" although severe "are not attended by the specific clinical signs and diagnostic findings necessary to meet the requirements set forth in the Listing of Impairments."  AR at 31. He goes on, however, to discuss only "claimant's mental impairments" in detail.  *Id.* Assuming the ALJ's general statement was meant to signal his evaluation of plaintiff's physical impairments, it is altogether insufficient.  *See Davis*, 862 F. Supp. at 7.  Absent a discussion of the evidence related to plaintiff's physical impairments, this Court is unable to evaluate whether the ALJ's determination is supported by substantial evidence.

Consistent with this narrow focus, plaintiff alleges that the ALJ erred by only receiving into evidence a report by a psychologist, and not a physician, regarding whether plaintiff's impairments medically equal a listing.  Pl.'s Mem. 15.  Although an ALJ retains ultimate responsibility to decide the legal question of equivalence, Social Security

13

Ruling 96–6P ("SSR 96–6P") requires an ALJ to obtain the opinion of a state agency physician or psychologist on the issue of medical equivalence. *See* 61 Fed. Reg. 34466, 34468 (July 2, 1996) ("[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."); *Barnett v. Barnhart*, 381 F.3d 664, 670-71 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."). Although the requirement allows for the opinion of psychologists, they are limited to "evaluat[ing] . . . mental impairments." 20 C.F.R. § 404.1616(d).

In response, defendant claims that, contrary to plaintiff's assertion, "state agency medical consultant James Grim, M.D. reviewed plaintiff's file and determined that her physical conditions did not meet or equal any listed impairment." Def.'s Mem. 20. This suggestion is misleading. Because this report found that plaintiff's physical impairments were not severe, it only seems to evaluate them in the context of her RFC. AR at 100. Needless to say, a determination of a plaintiff's RFC is a separate inquiry from the step three determination of equivalence. *See Carbajal v. Astrue*, No. 10-cv-02025-PAB, 2011 WL 2600984, at *2-3 (D. Colo. June 29, 2011) ("The lack of a required medical opinion on this issue is not rendered harmless by the ALJ's findings at step four and five."). Although defendant is correct that the burden is on plaintiff to demonstrate her impairments meet or equal a listing at step three, the ALJ is required to consider all of

plaintiff's impairments, both physical and mental, and to develop the record by receiving a physician's opinion on equivalence according to SSR 96–6P.

Plaintiff further argues that, even with respect to her mental impairments, the ALJ did not adequately consider the equivalence of her combined impairments because he did not specifically discuss Listing 12.04 relating to "affective disorders." Pl.'s Mem. 16-17. Defendant disagrees, noting that the record contains the report of Dr. Norman Kane, who specifically concluded that plaintiff's impairments were not equivalent to Listing 12.04. Def.'s Mem. 19. This opinion, however, was not discussed in the ALJ's decision. AR at 31-32. Because the ALJ retains the ultimate responsibility of determining equivalence, it is incumbent upon the ALJ to adequately explain his reasoning, including which evidence he credits and which he discards. *Brown*, 794 F.2d at 708. As to Listing 12.04, the ALJ wholly failed in this regard.

Accordingly, the Court will vacate and remand for the ALJ to correct the errors relating to his step three determination. *See Ademakinwa*, 696 F. Supp. 2d at 111 (finding that disability cases should be remanded when the ALJ has failed to explain his or her reasoning); *Carbajal*, 2011 WL 2600984, at *3 (remanding where the ALJ made his step three finding without any opinion from a medical source on the issue of equivalence); *Brunson v. Astrue*, 850 F. Supp. 2d 1293, 1307 (M.D. Fla. 2011) (remanding for failure to consider a physician's opinion as to equivalence of a physical impairment). Specifically, the ALJ should expressly consider plaintiff's physical impairments, including receiving into evidence the medical opinion of a physician regarding equivalence, and should further explain his reasoning regarding his conclusion

that plaintiff's mental impairments are not equivalent to a Listed Impairment, expressly considering Listing 12.04.

## III.   The ALJ's Residual Functional Capacity Analysis

Plaintiff next argues that the ALJ erroneously discounted the testimony of her treating physician, Dr. Samuels, when evaluating her RFC and concluding she can perform "light work." Pl.'s Mem. 17-18. I disagree. In determining a claimant's RFC, an ALJ is required to give "substantial weight" to the opinions of the claimant's treating physicians, but he need not accept medical opinions that are internally inconsistent or contradicted by substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Williams*, 997 F.2d at 1498. When an ALJ disregards the opinion of a claimant's treating physician, he must explain his reasoning. *Id.* Here, the ALJ did just that.

As the ALJ pointed out, there are substantial inconsistences between Dr. Samuel's medical observations and other evidence in the record. Dr. Samuels commented in May 2009 that plaintiff's various medical conditions prevented her from working and, in particular, that her "severe migraines" "restrict her day to day activity." AR at 425-28. To the contrary, the record shows that plaintiff did not experience debilitating migraines on a daily basis, but, by plaintiff's own account, only three times a month. AR at 526-27, 580. Moreover, the record reveals that by October 2009, at the latest, these migraines were "well controlled with medication," AR at 459, 461—a fact that plaintiff reconfirmed in March 2011, AR at 544. Not to be deterred, in an attempt to persuade this Court that the ALJ's reading of the record is erroneous, plaintiff extrapolates from a May 2010

episode—in which she was hospitalized for a migraine that had persisted for five days—that plaintiff may spend up to "half of any given month incapacitated" from migraines. Pl.'s Opp'n 10. That inference, to say the least, is a stretch. Were plaintiff's migraines truly causing such an extreme level of disruption, one would expect plaintiff to point to evidence beyond this singular hospital stay. Thus, while plaintiff disagrees with the ALJ's determination as to the severity of her migraines, in light of the record, I see no reason to disturb the ALJ's decision to afford Dr. Samuels' opinion little weight. This decision is supported by substantial evidence in the record and is adequately explained in the ALJ's decision as required by law. AR at 34; *see Williams*, 997 F.2d at 1498.

Likewise, the ALJ did not commit error by, as plaintiff describes it, "fail[ing] to even acknowledge" Dr. Samuels' opinion regarding plaintiff's ability to work. Pl.'s Mem. 18. As defendant notes, an ALJ is not obligated to defer to a doctor's testimony that a claimant is "unable to work," because such an opinion is not a "medical opinion," but instead an opinion on an issue reserved to the Commissioner because of its dispositive nature. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

## IV.   The ALJ's Step Five Determination

Finally, plaintiff argues that substantial evidence does not support the ALJ's determination that plaintiff is capable of working as a housekeeper or sorter. *See* Pl.'s Mem. 18-19. This argument turns on the same contention as plaintiff's disagreement with the ALJ regarding his RFC determination—that is, that the ALJ's assessment of the severity of plaintiff's migraines is without support in the record. Specifically, plaintiff argues that contrary to the ALJ's conclusion that plaintiff could perform the duties of a

housekeeper or sorter, the vocational expert testified in this matter that "if the record supports the severity and frequency of the headaches experienced by [plaintiff]," "it would preclude [her from] work." AR at 78.  What plaintiff fails to mention is that "the severity and frequency" to which the vocational expert points is plaintiff's own testimony that she suffers from migraines three to four times *per week*.  AR at 74-75.  This fact is clearly *not* supported by the record.  Rather, as discussed in the prior section, the record supports a finding that plaintiff suffered migraines only three times *per month* and that they were controlled with medication.  AR at 526-27, 580.  The vocational expert's opinion, therefore, says nothing about plaintiff's actual ability to work.  Thus, plaintiff has failed to point to evidence that would undermine the ALJ's step five determination.

## CONCLUSION

For the foregoing reasons, the Court finds that this case must be remanded to the ALJ.  A separate Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge